UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CORRIE W.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security Operations,

                Defendant.

Case No. 2:18-cv-00326-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Corrie W. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned affirms defendant's decision to deny benefits.

## FACTUAL AND PROCEDURAL HISTORY

On June 19, 2014, plaintiff filed applications for disability insurance benefits and SSI benefits. Dkt. 8, Administrative Record (AR) 12. In both applications, she alleged that she became disabled beginning March 12, 2013. *Id.* These applications were denied by the Social

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

1   Security Administration initially and on reconsideration on February 19, 2015. *Id.* A hearing was

2   held before an administrative law judge ("ALJ"), at which plaintiff appeared and testified, as did

3   a vocational expert. *Id.* Plaintiff amended her alleged onset date to June 1, 2014. *Id.*

In a decision dated December 8, 2016, the ALJ found that plaintiff is not disabled. AR 26-27. Plaintiff's request for review was denied by the Appeals Council on January 12, 2018, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed to this Court on March 9, 2018. Dkt. 4; 20 C.F.R. §§ 404.981, 416.1481.

In his December 2016 decision, the ALJ resolved steps one and two of the five-step sequential analysis in plaintiff's favor. AR 14-15. The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability and that she had the following severe impairments: thoracic outlet syndrome; status-post laparoscopy with lysis of adhesions; asthma; affective disorder; anxiety disorder; and personality disorder. AR 15. At step three, the ALJ found that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Social Security Administration's regulations. *Id.*

The ALJ found that, physically, the plaintiff had the residual functional capacity (RFC)

> **to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk, with normal breaks, for 6 hours in an 8-hour workday, and sit, with normal breaks, for 6 hours in an 8-hour workday. Pushing and/or pulling, including operation of hand or foot controls, is limited to occasional in the left upper extremity. The claimant can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolding. The claimant can frequently balance, kneel, and crouch. The claimant can occasionally stoop. The claimant can never crawl. The claimant is limited to occasional overhead reaching with the left upper extremity; she otherwise has no manipulative limitations. The claimant needs to avoid concentrated exposure to extreme cold, vibrations, pulmonary irritants . . . , as well as hazardous machinery and working at unprotected heights.**

AR 17 (emphasis in original). With respect to plaintiff's mental-health limitations, the ALJ found that she

> **can understand, remember, and carry out simple instructions. The claimant can make judgments commensurate with the functions of unskilled work (i.e., work that needs little or no judgment and work that can be learned in 30 days, with little specific vocational preparation). The claimant can respond appropriately to supervision, but she should not be required to work in close coordination with coworkers where teamwork is required. The claimant can deal with occasional changes in the work environment. The claimant can do work that requires no contact with the general public to perform the work tasks (i.e., she cannot work directly with the public, but the public can be in the vicinity).**

*Id.* (emphasis in original). Because of this assessment of the plaintiff's RFC, and the vocational expert's testimony based on it, the ALJ found that the plaintiff is not disabled because plaintiff can perform several jobs that exist in significant numbers in the national economy. AR 26-27.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits. She alleges that the ALJ erred:

(1) in evaluating the medical evidence;

(2) in discounting plaintiff's subjective testimony;

(3) in failing to develop the record; and

(4) consequently, in assessing plaintiff's residual functional capacity and finding she can perform jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ did not err in assessing the medical opinion evidence or plaintiff's testimony, or in failing to develop the record, and therefore that the ALJ did not err in determining plaintiff's residual functional capacity and that she is not disabled.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

### I. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to give sufficient weight to the opinions of an examining psychologist and a treating social worker. She asserts that the ALJ failed to give valid and supported reasons to discredit the opinions of Luci Carsten, Ph.D., and Dawn Merydith, a licensed clinical social worker (LICSW).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where

the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 722. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 725. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ needs to explain why "significant probative evidence has been rejected." *Id.* Essentially, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without an explanation that

another medical opinion is more persuasive, or criticizing it with boiler plate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31.

The ALJ must evaluate any medical opinion based on the factors in the SSA regulations, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency; and 5) specialization. *See* 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

A. <u>Examining Psychologist: Luci Carstens, Ph.D.</u>

The plaintiff contends that the ALJ failed to give proper weight to the opinion of Dr. Carstens, an examining psychologist.

Dr. Carstens conducted a clinical psychological evaluation of plaintiff in October 2014. AR 1305. She conducted a clinical interview and a mental status examination. *Id.* She also reviewed three items from plaintiff's medical record: an April 2014 intake form from SeaMar Community Health Centers, notes from an August 2014 primary-care visit, and plaintiff's disability self-report. *Id.*

Dr. Carstens observed that plaintiff reported "struggling with depression and anxiety symptoms for several years, which have been exacerbated by recent life stressors." AR 1305.

She also observed that plaintiff reported symptoms of post-traumatic stress disorder (PTSD) from traumatic experiences with past partners, as well as bipolar and anxiety symptoms. AR 1305-06. In the mental-status examination, Dr. Carstens found that plaintiff was appropriately dressed and groomed, alert, responsive, and cooperative, but that she was tearful during the session. AR 1307-08. She noted that plaintiff's mood and affect were depressed and anxious. AR 1308. Dr. Carstens also noted that plaintiff was unable to recall thee words after a three minute delay. *Id.* The rest of Dr. Carstens's findings were unremarkable. *Id.*

Dr. Carstens diagnosed plaintiff with bipolar disorder, generalized anxiety disorder, panic disorder with agoraphobia, PTSD, and borderline personality disorder. AR 1310. She opined that plaintiff showed "notable impairment" in delayed auditory recall. She also opined that plaintiff "would have marked difficulty adapting to changes in a routine work setting;" that plaintiff's "social anxiety would interfere significantly with her ability to deal effectively with unfamiliar people and situations;" and that plaintiff "would struggle in adapting her routine in a workplace setting to incorporate new functions or processes that are outside her comfort level." AR 1310.

The ALJ gave "minimal weight" to the portion of Dr. Carstens's opinion indicating plaintiff is limited in adapting to a workplace routine changes and changes in the workplace and in dealing with unfamiliar people. AR 24. The ALJ gave three reasons for rejecting these opinions: that they were inconsistent with plaintiff's work history; that they were based on limited records and plaintiff's self-reports, which were inconsistent with "longitudinal mental status findings;" and that they were inconsistent with plaintiff's activities. AR 24-25.

Because the ALJ gave at least two reasons that were specific and legitimate and supported by the record, the ALJ did not err in to discounting Dr. Carstens's opinion.

First, the ALJ's finding that Dr. Carstens's opinions about plaintiff's limitations were inconsistent with plaintiff's work history was a specific and legitimate reason to discount those opinions, and substantial evidence supports it.

An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints or when they are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). A claimant need not be utterly incapacitated to be disabled, and the "sporadic ability to work" is not inconsistent with disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Lester*, 81 F.3d at 833. Rather, the Commissioner must evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a); *Lester*, 81 F.3d at 833.

A claimant leaving work for non-disability reasons can be a valid reason to discount the claimant's testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (upholding credibility finding based in part on claimant "le[aving] his job because he was laid off, rather than because he was injured"); *Hunt v. Colvin*, 954 F. Supp. 2d 1181, 1194 (W.D. Wash. 2013) (similar holding).

The record supports the ALJ's application of this rule here. Plaintiff testified that she left her job as a nursing assistant because she was fired after being arrested, not because of her impairments. AR 41-43. She stated that if she had not been arrested she would have returned to work. *Id.*

Plaintiff contends that the ALJ's reasoning is invalid because plaintiff's depression and anxiety worsened after the alleged onset date, which was the day after she stopped working. But plaintiff does not support this bare assertion with citations to the record showing a worsening in her condition. *See* Dkt. 12, p. 10. Although the treatment records from plaintiff's visits to Ms.

Merydith suggest that she consistently appeared tearful, anxious, stressed, and overwhelmed, while reporting peaks and valleys in her symptoms, those records do not, overall, indicate a worsening in her condition. *See, e.g.*, AR 1458, 1462, 1482, 1493, 1505, 1509, 1514, 1518, 1654, 1655.

Instead, the record indicates that plaintiff's social and emotional limitations predated her alleged onset date and the date she lost her job. Plaintiff told Dr. Carstens that she had experienced anxiety and depression for several years. AR 1305. When asked about limitations from her "emotional state," plaintiff talked about her experience of it in college several years earlier. AR 49-50; *see* AR 1307 (plaintiff enrolled in college in 2004). A psychological evaluation from 2008 notes signs and symptoms similar to those in Ms. Merydith's notes. AR 1434. Plaintiff reported symptoms of anxiety and PTSD on her 2013 disability application. AR 304, 316. And in an August 2013 evaluation, Owen J. Bargreen, Psy.D., observed emotional signs and symptoms similar to those that Ms. Merydith found in her more recent notes. AR 877. Taken together, this is substantial evidence for the ALJ's finding that the conditions Dr. Carstens observed existed when plaintiff was still working. *See* AR 24.

Plaintiff also contends that a statement in a 2009 treatment note, indicating she was getting help from coworkers, shows that she was not performing her regular job functions. But that statement related to plaintiff's ability to perform physical requirements of the work, not her social and emotional limitations. *See* AR 426 (plaintiff reported coworkers were helping her "by doing the very physical work").

In short, the record indicates that Dr. Carstens based her opinion on conditions that existed before plaintiff stopped working. Neither Dr. Carstens nor Ms. Merydith noted exacerbations in the interim, so the ALJ's finding that Dr. Carstens's opinion was inconsistent

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 9

1  with plaintiff's ability to work is supported by substantial evidence. *See Bruton*, 268 F.3d at 828;

2  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that substantial evidence

3  supported ALJ's finding that claimant's conditions did not prevent her from working, where

4  plaintiff already had those conditions when she completed high school, obtained college degree,

5  completed nursing program, and participated in military training).

6        Second, the ALJ's finding that plaintiff's activities were inconsistent with severe social

7  anxiety was also a specific, legitimate, and supported reason to discount Dr. Carstens's opinion.

8  An inconsistency between a medical opinion and a claimant's daily activities can constitute a

9  specific and legitimate reason to discount that opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*,

10  169 F.3d 595, 600–02 (9th Cir. 1999). This principle must be applied under "a holistic review of

11  the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

12        The record as a whole supports this finding. In discussing Dr. Carstens's opinion, the

13  ALJ incorporated his discussion of plaintiff's activities at step three. AR 16, 25. The ALJ noted

14  the following, AR 16 (and the record supports these findings): Plaintiff reported going on dates

15  in October, November, and December 2015. AR 1485, 1493, 1505. She described her dating life

16  in positive terms and did not express anxiety about spending time with new people. *See id.*

17  Likewise, plaintiff reported being socially active: She went to a weekly exercise class with her

18  daughter and said she "really enjoys it." AR 1459. She went swimming with her daughter and

19  exercised with her at the YMCA. AR 1459, 1686. She also exercised with her friend at her

20  friend's apartment complex. AR 1686. In October 2016, she took her daughter to a corn maze

21  with her friend and the friend's daughter; she reported they went two days in a row and had fun.

22  AR 1653. Finally, plaintiff showed an ability to interact appropriately with her medical

providers. *See, e.g.*, AR 995, 1410, 1621, 1652 (observing no acute distress and normal mood and affect at appointments).

Plaintiff contends that the activities do not show that she is able to perform in a job. Instead, she contends, other records show she was anxious in public and during sessions. Dkt. 12, p. 12. Although plaintiff reported anxiety, the records she cites do not indicate that anxiety limited her activities in a way that would be inconsistent with the ALJ's findings. *See, e.g.*, AR 1458, 1475, 1489, 1509, 1518. Those records do not show limitations greater than those included in the RFC -- that plaintiff "should not be required to work in close coordination with coworkers where teamwork is required," should have only "occasional changes in the work environment," and should not have direct "contact with the general public." AR 17. Moreover, even if there is more than one way to rationally interpret the record, the Court must uphold the ALJ's rational interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Because substantial evidence supports the ALJ's finding that plaintiff's ability to socialize and function in a public setting are inconsistent with Dr. Carstens's opinion, the ALJ's second reason to discount that opinion was also valid. And because the ALJ thus offered two valid and supported reasons to discount Dr. Carstens's opinion about plaintiff's functioning, the Court does not reach the other reasons the ALJ gave for doing so. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless-error standard where one of several reasons for adverse credibility finding was invalid).

<u>Non-Acceptable Medical Source: Dawn Merydith, LICSW</u>

Plaintiff also asserts that the ALJ erred in rejecting an opinion of Ms. Merydith, a treating social worker.

In a June 2016 letter, Ms. Merydith wrote that "[d]ue to her major life stressors [plaintiff] is unable to feel secure enough to make significant progress." AR 1558. She concluded: "I believe once she can feel her basic needs are more secure she will be able to get out of her stuck crisis mode and be able to feel better for herself and her daughter." *Id.*

An ALJ must provide specific and legitimate reasons to reject the opinion of an "acceptable medical source" who treated or examined the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). But "acceptable" sources include "only licensed physicians and certain other qualified specialists." *Id.*; 20 C.F.R. §§ 404.1513(a), 416.913(a) (versions effective September 3, 2013 to March 26, 2017).

Licensed social workers are not "acceptable medical sources" under the regulations in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 404.1513(d); *McGee v. Astrue*, 368 F. App'x 825, 828 (9th Cir. 2010). These sources "are not entitled to the same deference" as acceptable medical sources. *Molina*, 674 F.3d at 1111 (citing 20 C.F.R. § 404.1527; Social Security Ruling (SSR) 06–03p). The ALJ needs to give only "reasons germane" to the witness to discount testimony from this type of source. *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

The ALJ in this case gave germane reasons to discount opinions from Ms. Merydith, a licensed clinical social worker.

The ALJ stated that he gave "little weight" to Ms. Merydith's opinion. AR 25. He found that Ms. Merydith did not give an opinion on plaintiff's RFC; that she was "not qualified to assess the claimant's physical conditions;" and that her treatment notes do not support mental limitations "to the degree that the claimant is precluded from any type of employment." *Id.*

The ALJ correctly stated that Ms. Merydith opined about plaintiff's physical condition to some extent. But Ms. Merydith primarily cited plaintiff's physical-health problems, along with other external stressors, as reasons that plaintiff was having difficulty progressing in her mental-health treatment. *See* AR 1558.

Nonetheless, the ALJ gave a germane reason to discount Ms. Merydith's opinion. In particular, the ALJ's first reason—that Ms. Merydith did not actually opine about limitations to plaintiff's functioning—is valid and supported. Ms. Merydith indicated that plaintiff's lack of progress was not for lack of effort, as "[s]he comes on time and works in session." *Id.* But Ms. Merydith wrote that plaintiff's struggles with physical issues—a shoulder injury, menstruation issues, and frequent sickness—and her sensitivity to medications "leave[ ] her at a severe disadvantage." She stated that plaintiff was in "crisis mode." *Id.*

The ALJ found affective disorder, anxiety disorder, and personality disorder to be severe impairments at step two. The ALJ's task in determining plaintiff's RFC was to determine to what extent these impairments limited plaintiff's ability to perform work functions. *See* SSR 96-8p. Ms. Merydith did not offer any specific opinion as to how plaintiff was limited in work functions. Accordingly, the ALJ was not required to offer germane reasons to reject her opinion. *See Turner*, 613 F.3d at 1223 ("[T]he ALJ did not need to provide "clear and convincing reasons" for rejecting Dr. Koogler's report because the ALJ did not reject any of Dr. Koogler's conclusions.").

## II. The ALJ's Assessment of Plaintiff's Subjective Testimony

Plaintiff also contends that the ALJ erred in discounting her subjective testimony.

With respect to her physical impairments, plaintiff testified as follows: She has had a lot of pain in her left arm since she had rib surgery, and two car accidents have given her neck pain. AR 41, 48-49. Because of pain in her neck and left arm she has difficulty with daily activities,

including personal hygiene, cooking, driving long distances, and shopping. AR 43-47. For example, she drops dishes at times. AR 44. Her daughter needs to help her with laundry because she has trouble reaching below her waist. AR 44-45. Her daughter also needs to help her reach above her head and in getting the garbage down the steps and into the bin. AR 44. She has to type with one hand, because typing causes numbness in her left elbow and fingers. AR 48. And she cannot perform her former job as a nursing assistant, because it is "too much work" and she feels exhausted keeping up with her household. AR 45-46. She is also afraid of dropping patients with her left arm while "transferring" them. AR 46.

In a function report, the plaintiff stated that she did not get out of bed and preferred not to be around people because of her mental health conditions. AR 242, 246-47. She also stated that she could pay attention for only 20 minutes, had trouble with memory and completing tasks, and experienced paranoia around authority figures. AR 247-48. (She did not report difficulty with concentration, understanding, following instructions, or getting along with others. AR 247.)

Finally, plaintiff testified about her mental-health conditions as follows: She often becomes "weepy." AR 49. She has difficulty going out in public, and she has anxiety going to her daughter's school or to the store. AR 49. She has missed appointments because of her emotional state. AR 49-50. And she smokes marijuana daily for her anxiety and pain. AR 52-53.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid as long as that

determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When assessing a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ gave clear and convincing reasons for discounting plaintiff's testimony about the severity of her symptoms.

The ALJ partially credited plaintiff's allegations about her physical limitations, limiting plaintiff in the RFC to jobs that require her to lift or carry no more than 20 pounds occasionally and 10 pounds frequently and to push, pull, and reach only occasionally with her left arm. AR 17.

But the ALJ discounted plaintiff's allegations, giving several reasons. First, the ALJ found that plaintiff's allegations are inconsistent with her work history; second, the ALJ noted those allegations are inconsistent with objective testing; third, the ALJ observed that the allegations are "out of proportion to the relatively unremarkable longitudinal physical

examination findings;" fourth, that they are inconsistent with plaintiff's presentation during appointments; and fifth, that they are "further undermined by possible symptom magnification." AR 19-22.

The ALJ's finding that plaintiff's allegations about her physical symptoms were inconsistent with her work history was a clear and convincing reason to discount that testimony, and the record supports it. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (holding ALJ validly discounted testimony by relying on claimant's ability to perform past work despite impairments).

Plaintiff reported pain and numbness in her left arm and fingers dating to two car accidents, in 2009 and 2010. *See* AR 1139. In August 2013, for example, she told Dr. Bargreen, referring to these symptoms, that she was "[k]ind of used to stuff because it has been since 2009 and 2010." AR 872. As the ALJ noted, plaintiff was able to work as a nursing assistant from January 2013 until her alleged onset date, despite these symptoms existing throughout that time.

Plaintiff's only challenge to this basis for discounting her physical-symptom testimony is that a treatment note from early 2009 indicates she was receiving help at work, and thus was incapable of performing her regular job functions. *See* Dkt. 12, p. 15. But that single statement—that others had been helping her "by doing the very physical work"—does not necessarily contradict the ALJ's finding that plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently, or render it unreasonable. *See* AR 17, 426; *Sample*, 694 F.2d at 642 (ALJ can draw reasonable inferences). The ALJ could reasonably infer from plaintiff's continuation of her work that this problem did not preclude her from working. Accordingly, this was a sufficient reason for discounting the severity of the physical symptoms alleged. *See Turner*, 613 F.3d at 1224-25.

The ALJ also found plaintiff's testimony about the severity of her physical symptoms inconsistent with objective evidence and findings in the record. AR 19-22. This was another clear and convincing reasons to discount that testimony, and substantial evidence supports it.

Determining that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 651 (9th Cir. 2011). A claimant's pain testimony, however, may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). The same is true with respect to a claimant's other subjective complaints. *See Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).

Plaintiff contends the ALJ relied on findings that are consistent with thoracic outlet syndrome. She contends that although MRIs and EMGs are used to diagnose that type of condition, ultrasounds are, too. Dkt. 12, p. 15. She points out that the ultrasound here showed significant vascular problems. *See* AR 867. In addition, she notes that a doctor diagnosed her with left neurogenic thoracic outlet syndrome with 80 percent certainty and opined that plaintiff was "moderately incapacitated." *See* AR 901.

But while plaintiff cites records supporting a *diagnosis* of thoracic outlet syndrome, that diagnosis is not disputed. The ALJ found it to be a severe impairment and incorporated certain limitations to lifting, carrying, and reaching in the RFC. AR 15, 17.

Instead, the issue in this appeal is whether substantial evidence supports the ALJ's finding that the objective findings in plaintiff's medical record were inconsistent with the *severity* of symptoms she testified to. *See* AR 20-21. Plaintiff focuses on the imaging results, but she does not dispute that the routine physical-exam findings in the record support the ALJ's

reasoning. Dkt. 12, p. 15; AR 20-21; *see* AR 1499 (noting limited cervical range of motion and tenderness, but "challenging" muscle testing and "no obvious focal weakness"), 1672 (similar findings); *see also* 1621 (noting good results from thoracic outlet syndrome surgery and normal findings on exam), 1640 (same). Accordingly, this reason was also legitimate and supported.

Regarding plaintiff's mental health symptoms, the ALJ discounted plaintiff's allegations because, first, they were also inconsistent with her ability to perform as a nursing assistant; second, because "her overall presentation during appointments is . . . not compatible with someone who has debilitating mental limitations;" and third, because "the record indicates that the claimant retains greater social functioning than alleged." AR 22.

Plaintiff's arguments that the ALJ erred in discounting her mental-health testimony are similar to her arguments that the ALJ erred in discounting Dr. Carstens's opinion. She contends that her anxiety and depression worsened after the alleged onset date, the day after she was fired. And she contends that Dr. Carstens's evaluation and Ms. Merydith's treatment records support her testimony. Dkt. 12, pp. 15-16.

But just as plaintiff's ability to work up until her onset date, and the fact that she left that job for non-disability reasons, was a valid reason for discounting Dr. Carstens's opinion about her mental impairments, it is also a valid reason to discount plaintiff's testimony about those same impairments. That reason was supported here: Plaintiff alleged mental conditions starting several years before leaving work (AR 22, 1305), as well as a physical condition, thoracic outlet syndrome, that also started several years prior (AR 19, 1139). Plaintiff worked until May 2014. AR 403. She left due to other reasons. AR 41-42. Because plaintiff's mental-health records from before the alleged onset date, when she was still working, show similar complaints and

observations, the ALJ's reasoning was valid and supported. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

The ALJ thus gave clear and convincing reasons to discount plaintiff's subjective symptom testimony.

### III. The ALJ's Duty to Develop the Record

Finally, plaintiff contends that the ALJ did not fulfill his duty to fully develop the record. Plaintiff contends that the ALJ should have called a medical expert to testify about whether her mental-health conditions met or equaled a listing at step three of the sequential evaluation process. She asserts that the ALJ should have called a medical expert because "[t]here is good evidence for a listing argument," based on evidence of her mental health conditions including hospitalizations, her work history, an inability to care for her daughter, homelessness, tearfulness, anxiety, and depression. Dkt. 12, pp. 13-14.

A claimant has the burden to provide evidence of her disability. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."); 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled."). The hearing is not adversarial in nature; the ALJ has a duty to develop the record regardless whether the claimant is represented by counsel and must inform himself or herself about the facts that are relevant. *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

The Commissioner points out that the ALJ asked plaintiff's counsel if there was "[a]nything else for the record in this case," and plaintiff's attorney stated "No, sir." AR 64. The

ALJ conducts a non-adversarial hearing and therefore, on judicial review, appellate rules of waiver and default concerning evidence that was not placed into the record may not be appropriate. The Court is mindful that "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 2001).

Nonetheless, plaintiff's challenge is without merit. Plaintiff does not identify a listing that the mental-health symptoms, conditions, and contributing factors she cites would meet or equal; nor does she explain how they would do so. Dkt. 12, pp. 13-14. The ALJ considered evidence from two state-agency medical experts, who opined that her conditions did not meet or equal a listing. *See* AR 103, 136. Plaintiff makes no argument that the ALJ failed to properly analyze the record and relevant listings at step three. *See* AR 15-16. Nor does she identify any ambiguity that a medical expert would be needed to resolve. Accordingly, the ALJ did not violate any duty to develop the record. *See Mayes*, 276 F.3d at 459-60.

## CONCLUSION

Based on the foregoing discussion, the undersigned finds the ALJ did not err in determining that plaintiff is not disabled. Defendant's decision to deny benefits is therefore AFFIRMED.

Dated this 27th day of December, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge